# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## Case No. 14-1329

_____

## DUSTIN LEE HONKEN,

### Appellant,

### v.

## UNITED STATES OF AMERICA,

### Appellee.

_____

## PETITION FOR PANEL REHEARING
## AND FOR REHEARING EN BANC

_____

## CAPITAL § 2255 PROCEEDINGS
### (District Court Case No. CV-10-3074-LRR)

Shawn Nolan
Chief, Capital Habeas Unit
Aren Adjoian
Timothy Kane
Assistant Federal Defenders
Federal Community Defender Office
 for Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

June 16, 2014

# PRELIMINARY STATEMENT

Appellant Dustin Lee Honken, the Petitioner below, is referred to herein by name or as Appellant.  The United States is referred to as the Government.

References to the transcript of the trial proceedings in this case are cited as "Tr." followed by a page number.  Transcripts from the § 2255 hearing are cited as "2255 Tr." followed by a page number.  Transcripts of other proceedings are cited as "Tr." followed by the date of the proceeding and a page number.  Pleadings entered on the docket in the District Court in this post-conviction case are cited by Document number only.  Pleadings entered on the docket in the related criminal cases in District Court include the case number.

The District Court opinion denying relief, issued on October 4, 2013 (Doc. No. 99), is cited as "DCO."   All other citations are either self-explanatory or are explained.  Parallel citations generally are omitted.

i

Appellate Case: 14-1329     Page: 2     Date Filed: 06/16/2014 Entry ID: 4165469

# TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD FOR GRANTING A CERTIFICATE OF APPEALABILITY. . . . . 2

I. The Court Should Grant a Certificate of Appealability Because the District Court's Finding in a Prior Case That the Conspiracy Ended in March 1993 Should Have Estopped the Government from Capitally Convicting Appellant of Committing Murders, in July and November 1993, During the Same Conspiracy, and Prior Counsel Were Ineffective. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

  A. The Prior Drug Conspiracy Case. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

  B. The Capital Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

  C. The Double Jeopardy Violation. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

  D. Counsel Were Ineffective. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

  E. The District Court and the Panel Erred in Denying a COA. . . . . . . . 12

Appellate Case: 14-1329 Page: 3 Date Filed: 06/16/2014 Entry ID: 4165469

# TABLE OF AUTHORITIES

## FEDERAL CASES

Apprendi v. New Jersey, 530 U.S. 466 (2000) ...................................................... 12

Ashe v. Swenson, 397 U.S. 436 (1970) .................................................. 4, 9, passim

Burns v. Gammon, 260 F.3d 892 (8th Cir. 2001) .................................................. 10

Garrett v. United States, 471 U.S. 773 (1985) ...................................................... 10

Honken v. United States, 558 U.S. 1091 (2009) ...................................................... 9

Manning v. Bowersox, 310 F.3d 571 (8th Cir. 2002) .......................................... 10

Miller-El v. Cockrell, 537 U.S. 322 (2003) .................................................. 2, 13, 15

Mitchell v. United States, 526 U.S. 314 (1999) ...................................................... 13

Murphy v. Puckett, 893 F.2d 94 (5th Cir. 1990) .................................................... 10

Nesbitt v. Hopkins, 86 F.3d 118 (8th Cir. 1996) ...................................................... 9

Randolph v. Kemna, 276 F.3d 401 (8th Cir. 2002) ................................................ 2

Reagan v. Norris, 365 F.3d 616 (8th Cir. 2004) .................................................... 10

Ring v. Arizona, 536 U.S. 584 (2002) ............................................................ 12, 13

Slack v. McDaniel, 529 U.S. 473 (2000) ................................................................ 2

United States v. Honken, 271 F. Supp. 2d 1097 (N.D. Iowa 2003) ................. 11, 12

United States v. Honken, 541 F.3d 1146 (8th Cir. 2008) ........................................ 9

United States v. Oppenheimer, 242 U.S. 85 (1916) ............................................ 4, 10

Appellate Case: 14-1329     Page: 4     Date Filed: 06/16/2014 Entry ID: 4165469

White v. Woodall, 134 S. Ct. 1697 (2014) ................................................... 2, 14, 15

## FEDERAL STATUTES

18 U.S.C. § 371 ................................................................................................ 7

21 U.S.C. § 801 ................................................................................................ 8

21 U.S.C. § 841 ................................................................................................ 7

21 U.S.C. § 846 .............................................................................................. 7, 8

21 U.S.C. § 848 ................................................................................................ 7

18 U.S.C. § 1512 .............................................................................................. 7

28 U.S.C. § 2253(c)(2) ..................................................................................... 2

Appellate Case: 14-1329    Page: 5    Date Filed: 06/16/2014 Entry ID: 4165469

Appellant, Dustin Lee Honken, a death-sentenced federal prisoner, seeks panel rehearing and rehearing en banc pursuant to F.R.A.P. 35, F.R.A.P. 40, and Eighth Circuit Local Rule 40A(b) following the panel's denial of a Certificate of Appealability (COA) and dismissal of his appeal on May 2, 2014.

## INTRODUCTION

This federal death penalty case presents a question of exceptional importance regarding whether this Circuit's decisions granting and denying COA are uniform and faithful to Supreme Court precedent. *See* F.R.A.P. 35(b)(1)(B).

Trial counsel failed to raise meritorious double jeopardy objections to the capital counts against Appellant. In post-conviction proceedings, the District Court found that Appellant's ineffectiveness claim was colorable and ordered a hearing. At the hearing, counsel acknowledged their error and testified that it resulted from poor communication and inattention. The District Court then denied relief on purely legal grounds by fashioning an exception to the double jeopardy principles upon which the claim relied. In a case not insulated by AEDPA deference, such a novel ruling is by definition "debatable among jurists of reason." Accordingly, the panel erred in denying a COA, and this Court should correct the error and issue a COA.

1

**STANDARD FOR GRANTING A CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c)(2), a COA should issue if the appellant has made "a substantial showing of the denial of a constitutional right." To meet this modest standard, the applicant need only show that "reasonable jurists could debate . . . whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see also Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) ("We . . . ask whether that resolution was debatable among jurists of reason."). This Court has accordingly recognized that the "reasonable-jurists-could-debate" threshold is a "modest standard." *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (internal quotation marks omitted).

Indeed, the Supreme Court has repeatedly emphasized that "fairminded jurists" can reasonably apply constitutional principles to reach differing conclusions "where the precise contours of the right remain unclear." *White v. Woodall*, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted). *Woodall* and related Supreme Court cases demonstrate that the District Court's novel ruling here was debatable among jurists of reason.

2

Appellate Case: 14-1329     Page: 7     Date Filed: 06/16/2014 Entry ID: 4165469

**I.** **THE COURT SHOULD GRANT A CERTIFICATE OF APPEALABILITY BECAUSE THE DISTRICT COURT'S FINDING IN A PRIOR CASE THAT THE CONSPIRACY ENDED IN MARCH 1993 SHOULD HAVE ESTOPPED THE GOVERNMENT FROM CAPITALLY CONVICTING APPELLANT OF COMMITTING MURDERS, IN JULY AND NOVEMBER 1993, DURING THE SAME CONSPIRACY, AND PRIOR COUNSEL WERE INEFFECTIVE[1]**

The question of whether Appellant was continuing to engage in a drug conspiracy during the time period in which these murders occurred was twice litigated in the District Court. The first time, in sentencing proceedings in 1997 and 1998, the District Court found and entered a judgment that Appellant was not engaged in the conspiracy after March 1993. The second time, in the ten capital counts for which Appellant was convicted, the jury reached the opposite conclusion. The first time, the answer to the question meant the difference between a 27-year prison sentence and a mandatory life sentence; the second time, the stakes were life and death. The first time, the Government purposefully sought final resolution of the question, despite knowing of the potential for "collateral consequences." The second time, defense counsel inexplicably failed to assert Appellant's rights pursuant to collateral estoppel and the Double Jeopardy Clause.

It has been "an established rule of federal criminal law" for nearly a century that, "when an issue of ultimate fact has been determined by a valid and final

---

[1] This issue was raised as Claim Two in the District Court. *See* Doc. No. 19 at 10-27.

Appellate Case: 14-1329   Page: 8   Date Filed: 06/16/2014 Entry ID: 4165469

judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (citing *United States v. Oppenheimer*, 242 U.S. 85 (1916)). This rule "is embodied in the Fifth Amendment guarantee against double jeopardy," *Ashe*, 397 U.S. at 445, and the rule holds regardless of whether the issue of fact was determined by a jury or by a judge. *Oppenheimer*, 242 U.S. at 87-88 ("however the issue was raised in the former case, after judgment upon it, it could not be reopened in a later prosecution.").

### A.     The Prior Drug Conspiracy Case

On April 11, 1996, Mr. Honken was indicted on charges of conspiracy to manufacture and distribute methamphetamine between 1992 and 1996, and related drug charges. N.D. Iowa Case No. 96-CR-3004-MWB, Doc. Nos. 5, 42. He pled guilty to two counts of the superseding indictment on June 2, 1997. *Id*., Doc. No. 76. The District Court accepted Mr. Honken's guilty plea with the understanding that:

> when it comes time for sentencing, we're going to start with a clean slate, and you'll be able to contest I think primarily the quantities, your role in the offense but basically anything else that you and Mr. Parish want to contest at the time of sentencing.

Tr. 6/2/97 at 14.

The District Court presided over an extended sentencing hearing between December 15, 1997, and February 24, 1998. *Id*., Doc. Nos. 137-38, 177-82. One of the issues disputed by the parties was whether the drug conspiracy continued after

4

Appellate Case: 14-1329     Page: 9     Date Filed: 06/16/2014 Entry ID: 4165469

Mr. Honken's pre-trial release on March 26, 1993, and thus whether any conspiratorial acts were committed between that date and March 21, 1995. If so, the sentencing guidelines required a three-point enhancement, which would have meant the difference between a mandatory life sentence and a finite term of imprisonment. *See* 1997 Sentencing Guidelines § 2J1.7. The parties thus had significant incentive to litigate – and vigorously contested – the issue.

Similarly, the Government sought an enhancement for possession of a firearm, and in support alleged various facts, including that Mr. Honken had possessed a Tec-9 handgun in the course of the drug conspiracy, had purchased a (different) handgun while on pretrial release in 1996, and had sought a high-powered automatic firearm. *See* Tr. 2/24/98 at 1220-22. Again, if the District Court had found in favor of the Government on any of these allegations, the enhancement would have resulted in a mandatory life sentence instead of the finite sentence ultimately imposed.

The Government – which at the time of the sentencing hearing believed that Mr. Honken had killed the five witnesses whose murders were prosecuted in the instant case – vigorously litigated these issues in seeking a life sentence. The Government presented twenty-five witnesses and numerous exhibits over the course of five days of hearings. As the District Court found, the Government litigated the disputed issues with "thoroughness and zealousness." Tr. 2/24/98 at 1228.

The Government, defense counsel Alfredo Parish, and the District Court were

5

all well aware of the potential "collateral consequences" of litigating these issues in the sentencing proceedings. *Id.* at 1239. Repeated mention was made of the ongoing grand jury investigation into the disappearance of the five witnesses, and of the potential that sentencing findings, in Mr. Parish's words, may later "be binding on any additional court." Tr. 1/25/00 at 6; *see also, e.g.*, Tr. 6/2/97 at 39; Tr. 12/15/97 at 66, 110-16; Tr. 2/17/98 at 628, 825; Tr. 2/24/98 at 1232, 1240.

At the conclusion of the hearing, the District Court made several findings against the Government and in Mr. Honken's favor. The court found that Mr. Honken did **not** continue engaging in the drug conspiracy while on pretrial release between March, 1993, and March, 1995. Tr. 2/24/98 at 1192. The court's final judgment specifically reflected this finding. N.D. Iowa Case No. 96-CR-3004-MWB, Doc. No. 183 at 7 (Judgment 2/25/98) ("the defendant did not commit a portion of the offense while on bond"); *Id.*, Doc. No. 219 at 7 (Amended Judgment 2/1/00) (same).

The court also rejected the Government's allegations that Mr. Honken possessed firearms during the conspiracy, and thus denied the Government's request for a firearm enhancement. Tr. 2/24/98 at 1246. Again, the court's final judgment reflected this finding. N.D. Iowa Case No. 96-CR-3004-MWB, Doc. No. 183 at 7 (Judgment 2/25/98) (adopting the factual findings in the presentence report, except as otherwise noted); *Id.*, Doc. No. 219 at 7 (Amended Judgment 2/1/00) (same).

6

**B.     The Capital Case**

On August 30, 2001, Mr. Honken was charged in a seventeen-count indictment for five murders occurring in July and November 1993.  N.D. Iowa Case No. 01-CR-3047-MWB, Doc. No. 1.  Counts 1 to 5 each charged murder of a witness under 18 U.S.C. § 1512.  *Id*., Doc. No. 46.  Counts 6 and 7 alleged various conspiracies under 18 U.S.C. §§ 371 and 373.  *Id*.  Counts 8 to 12 and Counts 13 to 17 alleged murders of the five victims "while" Mr. Honken was engaged in a drug conspiracy and a continuing criminal enterprise (CCE), respectively, between 1992 and 1998, under 21 U.S.C. § 848.  *Id*.  On these latter ten counts, the Government sought death sentences.  *Id*.[2]  Mr. Parish, who represented Mr. Honken in the prior drug case, was again appointed to represent him, this time with co-counsel.

Despite the prior judicial findings against the Government, the Government alleged and sought to prove the same factual issues as elements of the crimes and as conspiratorial acts in the capital trial.  For example:

> (1)     Counts 8 through 11 alleged that, "[o]n or about July 25, 1993, . . . **while** knowingly engaging [in a drug conspiracy under 21 U.S.C. §§ 846 and 841(b)(1)(A)] between 1992 and 1998," Mr. Honken committed four murders;

---

[2] In 1993, at the time of the murders, Congress had not authorized the death penalty for witness murder under 18 U.S.C. § 1512.  The only way that the Government could obtain a death sentence in this case was thus to charge that the murders occurred during the drug conspiracy/CCE.

Appellate Case: 14-1329     Page: 12     Date Filed: 06/16/2014 Entry ID: 4165469

(2)     Count 12 alleged that, "[o]n or about November 5, 1993, . . . **while** knowingly engaging [in a drug conspiracy under 21 U.S.C. §§ 846 and 841(b)(1)(A)] between 1992 and 1998," Mr. Honken committed the fifth murder;

(3)     Counts 13 through 16 alleged that, "[o]n or about July 25, 1993, . . . **while** engaging in and working in furtherance of a continuing criminal enterprise . . .[involving] a continuing series of narcotics violations under [21 U.S.C. § 801, et seq.] occurring between 1992 and 2000," Mr. Honken committed four murders;

(4)     Count 17 alleged that, "[o]n or about November 5, 1993, . . . **while** engaging in and working in furtherance of a continuing criminal enterprise . . .[involving] a continuing series of narcotics violations under [21 U.S.C. § 801, et seq.] occurring between 1992 and 2000," Mr. Honken committed the fifth murder;

(5)     the Government presented evidence and argument that Mr. Honken possessed various handguns in the course of the drug conspiracy. *E.g.*, Tr., 20, 24 (Government opening statement); Tr., 739-46 (testimony of Timothy Cutkomp); Tr., 1063-69 (testimony of Rick Held); Tr., 3216, 3239-42, 3246-47 (Government closing argument).

Mr. Honken's rights under the Fifth Amendment and federal law barred relitigation of these issues.  The District Court's prior findings that the drug conspiracy did not continue after March 1993 through March 1995, and that Mr. Honken committed no acts in furtherance of the conspiracy during that time, precluded as a matter of law the Government's attempt to establish the statutory nexus in Counts 8 to 17 that the murders occurred "while" Mr. Honken was engaged in the drug conspiracy and CCE.

At trial, many of the witnesses presented and issues litigated were the same as in the sentencing proceedings on the prior drug charges in the same court.  Trial

8

counsel, however, failed to object and failed to assert collateral estoppel.

Mr. Honken was convicted on all counts. The jury sentenced him to life in prison on six of the capital counts, and to death on the remaining four counts. The District Court also sentenced him to multiple life sentences on the non-capital counts. This Court affirmed, *United States v. Honken*, 541 F.3d 1146 (8th Cir. 2008), and the Supreme Court denied certiorari. *Honken v. United States*, 558 U.S. 1091 (2009).

On December 13, 2010, Mr. Honken filed his *Motion for Relief Pursuant to 28 U.S.C. § 2255 or 28 U.S.C. § 2241* alleging, *inter alia*, that trial counsel had provided ineffective assistance by failing to object to the Government's relitigation of the factual issues described above. Doc. No. 1. The District Court granted an evidentiary hearing, and on October 4, 2013, the court issued an opinion denying relief and denying a COA on all claims. Doc. No. 99. A panel of this Court subsequently denied COA without explanation.

### C. The Double Jeopardy Violation

Under the Double Jeopardy Clause, "when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties." *Ashe*, 397 U.S. at 443; *see also Nesbitt v. Hopkins*, 86 F.3d 118, 120 (8th Cir. 1996) (a factual issue may not be relitigated if it "was necessarily determined by the factfinder against the Government and, in the second prosecution, that same fact is required to be proved beyond a reasonable doubt in order to

9

convict.") (quotation omitted).  This rule governs regardless of whether the issue of fact was determined by a jury or by a judge; the only question is whether the issue's determination was implicit in "a valid and final judgment."  *Ashe*, 397 U.S. at 443; *see also Oppenheimer*, 242 U.S. at 87-88 ("however the issue was raised in the former case, after judgment upon it, it could not be reopened in a later prosecution.").

As set forth above, key factual issues alleged and disputed at trial – and upon which Mr. Honken's capital convictions on Counts 8 to 17 were necessarily based – were indistinguishable from the factual issues previously litigated and decided in Mr. Honken's favor in the same court.  The court's prior determination of these issues was clear and was explicit in the final judgment in the prior sentencing proceedings. The Government was thereafter bound by those findings, and its successful relitigation of those issues in Counts 8 to 17 of this case violated Mr. Honken's double jeopardy rights.  *See Garrett v. United States*, 471 U.S. 773, 798 (1985).

### D. Counsel Were Ineffective

It is well established that trial counsel's failure to raise a timely objection to a constitutional violation constitutes deficient performance.  *E.g., Reagan v. Norris*, 365 F.3d 616, 622 (8th Cir. 2004); *Manning v. Bowersox*, 310 F.3d 571, 576-77 (8th Cir. 2002); *see also Burns v. Gammon*, 260 F.3d 892, 896-97 (8th Cir. 2001) ("No sound trial strategy could include failing to make a constitutional objection . . ."); *Murphy v. Puckett*, 893 F.2d 94 (5th Cir. 1990) (trial counsel ineffective for failing

10

to litigate valid double jeopardy claim).

Despite their duty to pursue meritorious legal issues, and despite case law precluding relitigation of factual findings like those set forth above, trial counsel unreasonably failed to object. Trial counsel did not have a strategic or tactical reason for this failure. *See* 2255 Tr. at 19-21 (Attorney Parish); *id.* at 236-38 (Attorney Rogers); *id.* at 528-29 (Attorney Spies). Co-counsel Rogers drafted a pre-trial double jeopardy motion on other grounds, but he was not aware of the prior findings made in Mr. Honken's favor, or he overlooked those findings in preparing the motion. *Id.* at 236-38. Neither Mr. Spies nor Mr. Parish noticed the omission, even after the District Court issued an opinion denying the motion well in advance of trial, in which the court explicitly noted that the defense had not asserted collateral estoppel. *Id.*; *see United States v. Honken*, 271 F. Supp. 2d 1097, 1106 n.2 (N.D. Iowa 2003).

Thus, despite being on notice of the issue, and despite the absence of any strategic concern about pursuing this set of objections, trial counsel simply failed to do so. This oversight apparently occurred because Mr. Rogers drafted the double jeopardy challenge, whereas Mr. Parish was most familiar with the record from the prior sentencing proceedings in which he had represented Mr. Honken. *See* Pet. Ex. 119 at ¶ 4 (Rogers Decl.). Counsel was deficient.

Mr. Honken was prejudiced by counsel's failure. Mr. Honken could not have been convicted on Counts 8 to 17, and thus could not have been sentenced to death,

11

if trial counsel had precluded the relitigation of these factual issues and/or invoked the court's prior findings in the Motion for Acquittal or the Motion for New Trial.

### E.   The District Court and the Panel Erred in Denying a COA

The District Court did not address the *Strickland* aspect of this claim, did not discuss trial counsel's testimony about the issue, and apparently recognized that the prejudice flowing from counsel's alleged failure would have precluded Mr. Honken's conviction on the ten capital counts.  *See* DCO 79.  The court denied the claim by finding that a defendant simply has no right to assert collateral estoppel with respect to a court's factual findings at a prior sentencing proceeding.  *Id*. at 74-76.  The District Court thus carved out an exception to *Ashe*'s general rule that factual findings are binding whenever they are "determined by a valid and final judgment" and limited this rule to guilt phase determinations and capital sentencing determinations – but not to the non-capital sentencing determinations at issue here.  *See id.*

This ruling was both incorrect and novel.  The ruling was incorrect because the District Court relied exclusively on case law decided before *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 536 U.S. 584 (2002), and their progeny.  *See* DCO 70-72, 76 (citing cases).  By the time of this capital trial in 2004, however, the Supreme Court had repeatedly recognized that "[m]erely using the label 'sentence enhancement' to describe [certain conduct] surely does not provide a principled basis for treating [such conduct] differently" under the Constitution.  *Apprendi*, 530 U.S.

Appellate Case: 14-1329     Page: 17     Date Filed: 06/16/2014 Entry ID: 4165469

at 476; *see also Mitchell v. United States*, 526 U.S. 314, 328 (1999) ("We decline to adopt an exception for the sentencing phase of a criminal case with regard to factual determinations respecting the circumstances and details of the crime.").  In the wake of *Apprendi*, the "dispositive question" with respect to sentencing determinations "is one not of form, but of effect."  *Ring*, 536 U.S. at 602.  The District Court's ruling thus relied on an invalid distinction of sentencing proceedings.

In any event, the District Court's ruling was novel because no court had previously held that *Ashe* is *per se* inapplicable to non-capital sentencing findings.  Such a novel ruling is, by definition, "debatable among jurists of reason."  *Miller-El*, 537 U.S. at 337.

The District Court's opinion also weighed the competing interests at stake and decided that "the reexamination of an issue appears prudent if the effect of applying preclusion is to give one party a favored position."  DCO 78.  Because preclusion of the capital charges here would "confer[] a tremendous benefit on the accused," i.e., a life sentence without possibility of release instead of a death sentence, the District Court found such a result would amount to a "manifestly inequitable administration of the law."  *Id*. at 79.  Where, however, a judicial ruling on a constitutional claim depends on the court's weighing of competing policy interests and of the relative benefits to the parties of a particular ruling, then the ruling is plainly "debatable among jurists of reason."  *Miller-El*, 537 U.S. at 337.

13

The Supreme Court's recent jurisprudence on "fairminded disagreement" echoes and informs its case law addressing when an issue is "debatable." The Court's recent decision in *White v. Woodall*, 134 S. Ct. 1697 (2014), is particularly instructive and demonstrates that a COA should issue here. At capital sentencing proceedings, Woodall declined to testify and his counsel requested a no-adverse inference instruction, but the state court denied the request. *Id*. at 1701. Supreme Court precedent dictated that a no-adverse inference instruction was required at guilt phase, and had also recognized that a defendant's Fifth Amendment rights apply during sentencing proceedings – without directly addressing whether a no-adverse instruction was required. *Id*. at 1702-03 (discussing cases).

Under these circumstances, the Supreme Court held that the question of whether such an instruction was required at penalty phase was "not beyond any possibility of fairminded disagreement," *id*. at 1703 (internal quotation omitted), because "the precise contours of the right remain unclear." *Id*. at 1705. In other words, in considering whether a guilt phase legal principle also applies to a sentencing proceeding, "there are reasonable arguments on both sides," and any one resolution of the question is not objectively unreasonable. *Id.* at 1707. Rather, the question is debatable.

The same reasoning holds here. *Ashe* and its progeny dictate that, when "an issue of ultimate fact has been determined by a valid and final judgment, that issue

14

cannot again be litigated between the same parties." *Ashe*, 397 U.S. at 443. Before the District Court's opinion in this case, *Ashe* has never been held not to apply where the Government seeks to relitigate in a criminal trial the same factual issues determined against it at an earlier non-capital sentencing proceeding. Indeed, the District Court's consideration of competing policy concerns in reaching its decision underscores the novel analysis it undertook. Accordingly, the question is "not beyond any possibility of fairminded disagreement," *Woodall*, 134 S. Ct. at 1703, but is plainly "debatable among jurists of reason." *Miller-El*, 537 U.S. at 337. In denying a COA under such circumstances, the panel erred.

WHEREFORE, Appellant respectfully requests that the Court grant rehearing and issue a Certificate of Appealability.

Respectfully Submitted,

/s/ Shawn Nolan
Shawn Nolan
Aren Adjoian
Timothy Kane
Federal Community Defender Office
for Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

Dated:      June 16, 2014

Appellate Case: 14-1329    Page: 20    Date Filed: 06/16/2014 Entry ID: 4165469

**Certificate of Service**

I, Shawn Nolan, hereby certify that on this 16th day of June, 2014, I filed the foregoing *Petition for Panel Rehearing and for Rehearing En Banc* with service via electronic delivery to:

C.J. Williams
Assistant United States Attorney
United States Attorney's Office
Northern District of Iowa
401 First Street, S.E.
Hach Building, Suite 400
Cedar Rapids, IA 52401-1825

/s/ Shawn Nolan
Shawn Nolan